IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

**FAITH CHRISCO,**  )
 )
        Plaintiff, )
 )
  v. )    **Case No. 12-1144-RDR**
 )
**MICHAEL J. ASTRUE**, )
**Commissioner of Social Security,**  )
 )
        Defendant. )

## MEMORANDUM AND ORDER

Plaintiff is a relatively young woman who suffered an injury after slipping and falling while at work. On March 29, 2009, plaintiff filed an application for supplemental security income (SSI) benefits, alleging disability beginning on October 8, 2008. On December 2, 2010, a hearing was conducted upon plaintiff's application. The administrative law judge (ALJ) considered the evidence and decided on May 10, 2011 that plaintiff was not qualified to receive SSI benefits. The Appeals Council denied review and the ALJ's decision was then adopted by defendant. This case is now before the court upon plaintiff's motion to review the decision to deny plaintiff's application for benefits. Because the court believes the ALJ properly analyzed plaintiff's credibility and plaintiff's capacity for work, and that no error requiring reversal or

remand has been shown, the court shall affirm the decision to deny benefits.

I. STANDARD OF REVIEW

To qualify for SSI benefits, a claimant must establish that she is "disabled" under the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." A claimant becomes eligible for SSI benefits in the first month where she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1270 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th

2

Cir. 1994)(quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 11-21).

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. § 416.920 for determining eligibility for SSI benefits. The ALJ found first that plaintiff has not engaged in substantial gainful activity since the date of her application for benefits, March 25, 2009, although she has earned some wages after short unsuccessful attempts to work. Second, the ALJ found that plaintiff has the following severe medical impairments: degenerative disc disease of the lumbar spine; right shoulder impingement; right ankle impairment; and obesity. Third, he determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the social security regulations. The ALJ found that plaintiff had the residual functional capacity (RFC): to lift and carry up to 35 pounds occasionally and 15 pounds frequently; to stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks;

to sit for about 6 hours out of an 8 hour workday, with normal breaks; and push and/or pull the same weights. In addition, the ALJ found that plaintiff can perform no more than occasional bending, stooping, twisting or overhead reaching with the right upper extremity. With this RFC in mind, the ALJ found in the fourth step of his sequential analysis that plaintiff could not perform any past relevant work. Finally, at the fifth step, the ALJ concluded, after considering plaintiff's age, education, work experience, and RFC, that there were jobs which existed in significant numbers in the national economy that plaintiff could perform. In making this finding, the ALJ relied upon a vocational expert who testified that plaintiff would be able to perform the requirements of a cafeteria attendant, a small parts assembler, a bonder of electronic components, and a wire wrapper/patcher.

III. PLAINTIFF'S TESTIMONY WAS PROPERLY ANALYZED.

Plaintiff's first argument to reverse or remand the decision to deny benefits is that the ALJ improperly analyzed and rejected critical portions of plaintiff's testimony, particularly with regard to plaintiff's right ankle pain and swelling and the need to elevate her legs. Plaintiff testified that her right ankle swells and gets "real bad" once or twice every two weeks. (Tr. 43). She elevates it to obtain relief. (Tr. 42). Plaintiff also testified that she cannot lift more

4

than 10 to 15 pounds; she cannot walk more than six blocks; she cannot sit or stand for more than one hour; and that pain lessens her sleep so that she suffers fatigue during the day.

Citing Hardman v. Barnhart, 362 F.3d 676, 678-79 (10th Cir. 2004), plaintiff contends that the ALJ improperly employed "boilerplate language" to discredit all of plaintiff's testimony. In Hardman, the Tenth Circuit cautioned against the use of "boilerplate language" in conducting a proper credibility analysis and stated that an ALJ's credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quoting Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)). The purpose of this warning is to permit a court upon review to determine the specific evidence which led the ALJ to reject a claimant's testimony. Id. at 679. In Hardaman, the Tenth Circuit could not find support in the record for the ALJ's "boilerplate" conclusion that the claimant's allegations were inconsistent with a lack of medication for severe pain, lack of treatment for pain, and objective medical evidence. The Tenth Circuit found evidence in the record of a significant course of pain medication, efforts to obtain treatment for persistent pain, and objective medical tests to show a basis for pain.

This case is much different from the Hardaman case. The medical treatment record, medical findings, and the opinion of

5

health care providers support the ALJ's judgment that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC] assessment." (Tr. 16-17).

The ALJ's opinion in this case reviewed plaintiff's testimony regarding pain and restricted movement in her back, right shoulder, and right ankle. (Tr. 16). It also reviewed plaintiff's description of her activities of daily living. Id. While agreeing that plaintiff had back, shoulder and ankle impairments, the ALJ found that these ailments did not cause functional limitations to the extent claimed by plaintiff. (Tr. 17). The ALJ explained that plaintiff had a history of initial conservative treatment for the back and shoulder conditions which initially arose when plaintiff slipped and fell at work in October 2008. Plaintiff testified that her ankle impairment or swelling dated back to 2003 or before. (Tr. 34, 45). The ankle condition also has been treated conservatively with ibuprofen and leg elevation. (Tr. 42). MRIs did not show fractures or dislocations and lumbar spine images did not show irregularities. (Tr. 17). Images of the right ankle revealed:

> indeterminate cortical irregularities involving superficial cortex of the medial malleolus and an old tiny avulsion distal to that structure was noted but no definitive acute fracture was found. Some soft

6

tissue swelling noted laterally but otherwise, the impression was negative.

Id. Plaintiff was diagnosed with a back strain and a shoulder strain, muscle spasm, and dysfunction in the lumbar and sacral regions. Id. She was released to return to work in two days. Id. Plaintiff had physical therapy in January 2009 and reported some improvement, but still had pain in her right arm and shoulder. Id. At that time, there was normal strength in her upper extremities and the straight leg raising test was negative. Id.

MRIs of her shoulder and back in February 2009 did not show a rotator cuff tear "or prominent tendinopat[h]y", but did show "moderate anterior down slop[]ing of the acromion" and disc desiccation and mild central bulge at L5-S1." Id. Although plaintiff complained of pain to medical providers in May 2009, she said that she had not taken any medication because it made her tired and itchy. Id. Plaintiff testified that she took ibuprofen occasionally and that she went to the emergency room when she had the worst pain, which was once or twice a year. (Tr. 40).

Plaintiff reported much improvement in her low back pain on May 15, 2009. (Tr. 18). There was only mild pain and tenderness, but no spasm and a negative straight leg raising

7

test.  Id.  Plaintiff had normal strength in her upper extremities.  Id.

Plaintiff changed doctors.  After an examination in late May 2009, it was reported by Dr. Sandra Barrett that plaintiff had a limited range of motion in all directions, some tenderness over the right shoulder with a negative drop arm sign and possible impingement.  Id.  No findings were made regarding plaintiff's right ankle.  Id.  Dr. Barrett expressed concern that plaintiff was focused on qualifying for disability.[1]  Id.  She noted that plaintiff's MRI results were benign, she increased plaintiff's lifting restrictions to 30 pounds and she discontinued plaintiff's medications.  Id.  By August or September 2009, Dr. Barrett released plaintiff to return to work without restrictions and indicated that plaintiff was at 0% impairment.  Id.

The ALJ also reviewed the findings of Dr. George Fluter who conducted an independent medical examination of plaintiff.  (Tr. 18-19).  The ALJ considered Dr. Fluter's findings of some impairment more convincing that Dr. Barrett's findings of zero impairment, even though Dr. Barrett was a treating physician. (Tr. 19).  The reports of Dr. Estivo and the examining physicians of New Medical Health Care were also reviewed and

---

[1] Dr. John P. Estivo, D.O. also made comments to this effect and remarked that plaintiff showed signs of overreaction and malingering. (Tr. 433-34). On the other hand, Dr. Fluter stated there was no evidence of over-reaction during his examination. (Tr. 505).

8

discussed by the ALJ.  Id.  The ALJ noted that the restrictions discussed in these reports were considered temporary.

After reviewing plaintiff's testimony, the ALJ's opinion, and the medical records in this matter, the court concludes that the ALJ did not improperly analyze plaintiff's credibility. Instead of relying upon boilerplate language divorced from medical evidence in the record, the ALJ gave specific consideration to the medical records and linked the findings in those records to factors which are relevant to a proper credibility analysis.

IV. THE ALJ DID NOT ERR IN DETERMINING PLAINTIFF'S RFC.

A. The ALJ properly considered plaintiff's ankle impairment.

Plaintiff claims that the ALJ did not really consider plaintiff's ankle impairment in determining plaintiff's RFC because her ankle impairment was not mentioned by Dr. Fluter, whose conclusions were given significant weight by the ALJ. We reject this contention. The ALJ acknowledged the evidence of an ankle impairment, discussed that evidence, and considered plaintiff's testimony that she had prolonged swelling and pain, and needed to elevate her feet. (Tr. 16). Generally, courts credit statements that a matter has been considered by another tribunal. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). Here, there is no reason to find that the ALJ did not

9

consider the ankle impairment in determining plaintiff's RFC; he simply did not find the impairment to be as limiting as plaintiff contends.

There is more than adequate factual support for the RFC assessment even considering the evidence of plaintiff's ankle impairment. Plaintiff has the burden of proving her RFC. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(plaintiff bears the burden of proof through step four of the analysis). Yet, plaintiff did not mention her ankle impairment in her application for SSI benefits. (Tr. 156). Nor did she mention the ankle impairment during a number of visits to Drs. Fluter, Barrett and Estivo. (Tr. 504, 253-54, 433-34). Plaintiff also worked for several years with her ankle impairment. The record simply does not support a claim that the RFC determination is deficient because the ALJ failed to properly consider plaintiff's ankle impairment.

B. The ALJ properly considered the obesity factor.

As with the ankle impairment, plaintiff argues that by largely adopting the functional limitations set forth in Dr. Fluter's opinion, the ALJ must have ignored the impact of plaintiff's obesity upon plaintiff's RFC because Dr. Fluter did

not mention that plaintiff was obese.[2]  The ALJ, however, specifically discussed plaintiff's obesity:

> [T]he claimant's obesity is not such as to prevent ambulation, reaching, or postural maneuvers. It does, though, in combination with her degenerative disc disease of the lumbar spine and right ankle impairment, somewhat reduce the claimant's ability to carry, bend, stoop, or twist. A reduction in capacity to work at the medium exertional range with some further appropriate work restrictions is therefore warranted. These limitations are accounted for in the residual functional capacity as determined herein.

(Tr. 15). Similar commentary by the ALJ is also contained at Tr. 18. The ALJ also acknowledged that obesity may limit a person's ability to manipulate objects and to tolerate extreme heat, humidity or hazards. (Tr. 15). In addition, he recognized that he must consider whether obesity significantly limits an individual's physical or mental ability to do basic work activities. (Tr. 14). There is no reason on this record to stray from the general rule of crediting the ALJ's statements that he considered plaintiff's obesity in making his rulings with regard to plaintiff's RFC.

Plaintiff further contends that (assuming the ALJ <u>did</u> consider plaintiff's obesity) the ALJ improperly made his own medical judgments regarding the impact of plaintiff's obesity instead of obtaining medical evidence on the matter. The

---

[2] Dr. Fluter did a physical examination of plaintiff and described her as a "well nourished, well developed female who is in no acute distress." (Tr. 505). He described her gait as well as her muscle strength and bulk. <u>Id.</u> It therefore appears likely that Dr. Fluter considered plaintiff's body mass in his examination, even if he did not use the term "obese."

11

determination of plaintiff's RFC, however, is an issue reserved for the ALJ. McDonald v. Astrue, 2012 WL 2989935 *9 (10th Cir. 7/23/2012); Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). The ALJ must consider the entire record, including all relevant medical and nonmedical evidence and plaintiff's own statements. 20 C.F.R. § 416.945(a). To reiterate, plaintiff has the burden of proof. Given the record before the court, substantial evidence supports the ALJ's conclusions regarding plaintiff's RFC as it is affected by plaintiff's obesity. In this regard, we note that plaintiff did not list obesity as a limiting condition in her application for SSI benefits. (Tr. 156). We also note that plaintiff did not mention obesity as a limiting condition in her testimony before the ALJ.

After reviewing the ALJ's decision and the medical record, the court is convinced that the ALJ properly considered plaintiff's obesity in determining plaintiff's RFC.

C. **The issue of plaintiff's myofascial pain does not require reversing or remanding this matter**.

Plaintiff argues that remand is required because even though the ALJ gave "significant weight" to the opinion of Dr. Fluter and followed Dr. Fluter's conclusions almost completely in the RFC findings, the ALJ did not mention Dr. Fluter's diagnosis that plaintiff suffers from myofascial pain affecting

the lower back. Plaintiff contends that the ALJ improperly ignored or discredited Dr. Fluter's myofascial pain diagnosis.

The court disagrees. Given the ALJ's discussion of Dr. Fluter's decision, it appears clear to the court that the ALJ implicitly considered the myofascial pain diagnosis. See Prochaska v. Barnhart, 454 F.3d 731, 737 (7th Cir. 2006)(finding an implicit consideration obesity through review and discussion of doctor's reports); Lehman v. Astrue, 2013 WL 687088 *7-8 (D.Md. 2/22/2013)(same). Even if the ALJ did not consider plaintiff's myofascial pain or improperly rejected it, the court believes this should be considered harmless error. In most respects, the ALJ adopted Dr. Fluter's analysis with regard to plaintiff's RFC.[3] There is no reason to find that a remand to reconsider the myofascial lower back pain diagnosis would change plaintiff's RFC since the ALJ adopted Dr. Fluter's analysis of plaintiff's back limitations. See Prochaska, 454 F.3d at 737 (finding harmless error where there is no demonstration of how factor not discussed by ALJ further impaired claimant's ability to work); Adams v. Astrue, 880 F.Supp.2d 895, 910-11 (N.D.Ill. 2012)(remand is not required for consideration of doctor's reports that are consistent with ALJ's RFC findings); Mueller v.

---

[3]As discussed later in this opinion, the ALJ limited plaintiff to occasional overhead reaching with her right arm while Dr. Fluter recommended only occasional activity at or above shoulder level with her right arm. Aside from that, the ALJ appears to follow Dr. Fluter's report with regard to plaintiff's RFC.

13

Astrue, 860 F.Supp.2d 615, 638-39 (N.D.Ill. 2012)(harmless error not to address obesity when the record supports RFC finding and claimant fails to specify how obesity further impaired ability to work); Bonecutter v. Astrue, 2012 WL 4891593 *8 (S.D.W.Va. 9/12/2012)(if opinion was consistent with ALJ's RFC findings then failure to analyze and discuss it would be harmless error); Kersey v. Astrue, 614 F.Supp.2d 679, 696 (W.D.Va. 2009)(failure to discuss doctor's opinion is harmless when a different administrative result would not have been reached).

D. The ALJ's RFC limitations upon overhead reaching are sufficiently supported in the record.

Finally, plaintiff argues that the ALJ's RFC finding should be reversed or remanded because, although the ALJ gave Dr. Fluter's findings "significant weight", the ALJ adopted a less restrictive limit upon plaintiff's functional capacity without explaining why Dr. Fluter's opinion was not followed. Dr. Fluter recommended that plaintiff be limited to activities using her right arm "at or above shoulder level . . . [on] an occasional basis." (Tr. 502, 506). But, the ALJ found that plaintiff should be limited to occasional "overhead reaching" with her right arm. (Tr. 15).

In support of her argument, plaintiff cites Sitsler v. Barnhart, 182 Fed.Appx. 819 (10th Cir. 6/1/2006). In Sitsler, the Tenth Circuit held that it was error for an ALJ to fail to

14

explain why he excluded limitations contained in an <u>uncontradicted</u> medical report from his RFC assessment. Here, there is evidence which supports the ALJ's slightly less restrictive limit upon plaintiff's right arm RFC. Contrary to Dr. Fluter, plaintiff's treating physician, Dr. Barrett, placed <u>no</u> restrictions upon plaintiff as of September 16, 2009. (Tr. 267). Prior to that, on May 28, 2009, Dr. Barrett restricted plaintiff to "limited over shoulder reaching on the right." (Tr. 262). This provides support for the ALJ's conclusions. In addition, while plaintiff's testimony before the ALJ describes pain with lifting, dressing her children or just reaching above her head to get something (Tr. 36, 44), it would be reasonable for the ALJ to conclude that plaintiff's description of her activities did not preclude a finding that allows for occasional overhead reaching. See <u>Boswell v. Astrue</u>, 450 Fed.Appx. 776, 779 (10th Cir. 12/14/2011)(affirming denial of benefits in spite of claimant's probable headache pain); <u>Chavez v. Barnhart</u>, 126 Fed.Appx. 434, 439 (10th Cir. 2005)(affirming denial of benefits despite claimant's discomfort while walking and sitting); <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990)(to be disabling, pain must be so severe as to preclude any substantial gainful employment); <u>Gossett v. Bowen</u>, 862 F.2d 802, 807 (10th Cir. 1988)(disability requires more than mere inability to work without pain).

Plaintiff also cites Brown v. Commissioner of Social Security Admin., 245 F.Supp.2d 1175, 1186-87 (D.Kan. 2003) in support of her argument that the ALJ did not adequately support his RFC determination. This case is distinguishable, however. In Brown, the court found that the ALJ's RFC was materially inconsistent in many respects from the state agency assessment with which the ALJ purportedly concurred. The variation between the ALJ's RFC in this case and Dr. Fluter's assessment is minimal and plaintiff has not shown that it is material.

In sum, the determination of plaintiff's RFC is an administrative assessment based upon all the evidence in the record. While the assessment requires discussion, it does not require that specific limitations be supported with citation to specific statements in medical evidence or opinions. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012); Wolf v. Astrue, 2012 WL 4522131 *6 (D.Kan. 10/1/2012). We believe the ALJ's RFC in this case is adequately explained and supported in the record.[4]

V. CONCLUSION

For the above-explained reasons, the defendant's decision to deny plaintiff's application for SSI benefits is affirmed.

---

[4]This conclusion dispels any issue with the hypothetical used by the ALJ to question the vocational expert at the administrative hearing. Plaintiff raises a problem with the hypothetical at the end of her brief in this matter. Doc. No. 11, p. 20.

**IT IS SO ORDERED.**

Dated this 8th day of March, 2013 at Topeka, Kansas.

>                    *s/Richard D. Rogers*
>                    United States District Judge